UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RANDY SMITH**, as next friend of **MALIK TREVON SMITH**, a minor **DALLAS SCHUBERT** as next friend of **EMMA SCHUBERT**, a minor, **JOYCE ROPER**, as next friend of **GRAHAM ROPER BALL**, a minor, **MELODY WOLFE**, as next friend of **CARVER WOLFE**, a minor, **RENEE BOYLE**, as next friend of **KYLIE ANN BOYLE**, a minor, **SADIGOH GALLOWAY**, as next friend of **ZEPHANIA GALLOWAY**, a minor, and **BERNIE 2016, INC.**, <br><br> *Plaintiffs* <br><br> **v.** <br><br> **JON HUSTED**, individually and in his official capacity as Secretary of State of the State of Ohio, <br><br> *Defendant.* | Case No. 2:16-cv-212 |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs, by their attorneys Kegler Brown Hill & Ritter, hereby complain of the Defendant and allege:

**JURISDICTION AND VENUE**

1) This Court's jurisdiction over Plaintiffs' claims is predicated on 28 U.S.C. § 1331. Plaintiffs' claims arise under federal law as they are predicated on 52 U.S.C. § 10301, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

1

2) Venue is proper in this District because Defendant can be found within this District, in the City of Columbus, Franklin County, the seat of Ohio's state government.

### PARTIES

3) At all times hereinafter mentioned, Plaintiff Randy Smith was, and is, the father of minor Malik Trevon Smith ("Mr. Smith"). Mr. Smith was, and is, a natural person domiciled in the State of Ohio, in the City of Cleveland Heights, Cuyahoga County. Mr. Smith is a natural-born citizen of the United States. Mr. Smith was born on May 13, 1998 and is presently 17 years of age. Mr. Smith will turn 18 years of age on May 13, 2016 and will be eligible to vote in the November 8, 2016 general election.

4) At all times hereinafter mentioned, Plaintiff Dallas Schubert was, and is, the mother of minor Emma Schubert ("Ms. Schubert"). Ms. Schubert was, and is, a natural person domiciled in the State of Ohio, in the City of Cleveland Heights, Cuyahoga County. Ms. Schubert is a natural-born citizen of the United States. Ms. Schubert was born on April 10, 1998 and is presently 17 years of age. Ms. Schubert will turn 18 years of age on April 10, 2016 and will be eligible to vote in the November 8, 2016 general election.

5) At all times hereinafter mentioned, Plaintiff Joyce Roper was, and is, the mother of minor Graham Roper Ball ("Mr. Ball"). Mr. Ball was, and is, a natural person domiciled in the State of Ohio, in the City of Cleveland Heights, Cuyahoga County. Mr. Ball is a natural-born citizen of the United States. Mr. Ball was born on August 1, 1998 and is presently 17 years of age. Mr. Ball will turn 18 years of age on August 1, 2016 and will be eligible to vote in the November 8, 2016 general election.

6) At all times hereinafter mentioned, Plaintiff Melody Wolfe was, and is, the mother of minor Carver Wolfe ("Ms. Wolfe"). Ms. Wolfe was, and is, a natural person

domiciled in the State of Ohio, in the suburban City of Bexley, Franklin County.  Ms. Wolfe is a natural-born citizen of the United States.  Ms. Wolfe was born on October 30, 1998 and is presently 17 years of age.  Ms. Wolfe will turn 18 years of age on October 30, 2016 and will be eligible to vote in the November 8, 2016 general election.

7) At all times hereinafter mentioned, Plaintiff Renee Boyle was, and is, the mother of minor Kylie Anne Boyle ("Ms. Boyle").  Ms. Boyle was, and is, a natural person domiciled in the State of Ohio, in the city of Shaker Heights, Cuyahoga County.  Ms. Boyle is a natural-born citizen of the United States.  Ms. Boyle was born on July 2, 1998 and is presently 17 years of age.  Ms. Boyle will turn 18 years of age on July 2, 2016 and will be eligible to vote in the November 8, 2016 general election.

8) At all times hereinafter mentioned, Plaintiff Sadigoh Galloway was, and is, the mother of minor Zephania Galloway ("Ms. Galloway").  Ms. Galloway was, and is, a natural person domiciled in the State of Ohio, in the city of Euclid, Cuyahoga County.  Ms. Galloway is a natural-born citizen of the United States.  Ms. Galloway was born on October 27, 1998 and is presently 17 years of age.  Ms. Galloway will turn 18 years of age on October 27, 2016 and will be eligible to vote in the November 8, 2016 general election.  (Ms. Galloway, together with Mr. Smith, Ms. Schubert, Mr. Ball, Ms. Wolfe and Ms. Boyle, are collectively referred to hereinafter as the "Individual Plaintiffs").

9) At all times hereinafter mentioned, Plaintiff Bernie 2016, Inc. (the "Campaign," together with the Individual Plaintiffs, "Plaintiffs") was, and is, a not-for-profit corporation and political organization formed under the laws of the State of Vermont, consistent with the Federal Election Campaign Act of 1971.  The Campaign is the election vehicle for 2016 national

presidential candidate Bernie Sanders. The Campaign maintains its principal place of business at 131 Church Street, Suite 300, Burlington, Vermont.

10) Upon information and belief, Defendant Jon Husted was, and is, a natural person holding the office of Secretary of State of the State of Ohio, having been sworn into that position on January 10, 2011. Acting under color of state law, Mr. Husted serves as the Chief Election Officer of the State of Ohio, and has primary responsibility for overseeing general and primary elections within the state. Mr. Husted supervises the administration of state election laws and issues directives regarding the interpretation, application and implementation of those laws.

## FACTS

### *The Threshold Voter Law and its Reinterpretation*

11) Section 3503.011 of the Ohio Revised Code (the "Threshold Voter Law"), enacted March 23, 1981, states that "[a]t a primary election every qualified elector who is or will be on the day of the next general election eighteen or more years of age [hereinafter "Threshold Voters"], and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote, <u>shall be entitled to vote such ballot at the primary election</u>." (Emphasis added).

12) Ohio is one of more than 20 states that have enacted Threshold Voter Laws. One of the principal purposes of these laws is to increase participation among Threshold Voters in general elections by mobilizing them to vote in state primaries.

13) On February 5, 2008, former Ohio Secretary of State Jennifer Brunner issued Directive 2008-22 (the "Prior Directive"), clarifying the impact of the Threshold Voter Law on the March 4, 2008 primary elections being held for the 2008 election cycle. The Prior Directive states, in relevant part: "Ohio law allows [Threshold Voters] to vote <u>solely on the nomination of</u>

4

<u>candidates</u>. This is because they will be eligible to vote for the nominees for this office at the November general election." (Emphasis added).

14) In or around January, 2009, former Secretary of State Brunner published advertisements and awareness-raising materials for the Ohio's "Vote @ 17" initiative, aimed at educating Threshold Voters about their rights under the Threshold Voter Law.

15) The Secretary of State created bookmarks (the "Vote at 17 Bookmarks") in connection with its "Vote @ 17" initiative. The Vote at 17 Bookmarks have been continuously hosted on the Secretary of State's website since their original publication (*available at* http://www.sos.state.oh.us/sos/upload/voter/voteat17/bookmark.pdf). True and correct copies of the Vote at 17 Bookmarks are attached hereto as "Exhibit 1."

16) The Vote at 17 Bookmarks state that "The only things 17-year-olds can't vote on at the primary are one-time questions on issues like school levies or statewide ballot issues. In addition, 17 year-olds are not permitted to vote on the election of state or county central committee persons." Exh. 1, p. 2. The Vote at 17 Bookmarks do not state that Threshold Voters are ineligible to vote in presidential primaries.

17) Upon information and belief, consistent with the Prior Directive and the Vote at 17 Bookmarks, the Ohio Secretary of State has permitted Threshold Voters to vote in national presidential primaries since the enactment of the Threshold Voter Law in 1981. Upon information and belief, Threshold Voters were permitted to vote in presidential primaries in the 2012, 2008 and 2004 election cycles.

18) In or around December, 2015, Defendant published a revised 2015 Election Official Manual (the "Election Manual").

19) At Section 1.03(B)(1) on page 314 of the Election Manual (page 7-6 within the Election Manual's internal pagination), Defendant adopted a new interpretation of the Threshold Voter Law (the "Reinterpretation"), stating that "In presidential primary elections, a 17-year-old voter is not permitted to vote for presidential delegates, because delegates are elected and not nominated."

20) The Reinterpretation of O.R.C. § 3503.011 references the Supreme Court of Ohio's 1908 decision in *State ex. rel. Webber v. Felton*, 77 Ohio St. 554, 84 N.E. 85 (1908), and O.R.C. §§ 3503.12 and 3503.121, which set forth the procedures under which delegates to the national party conventions are chosen during presidential election cycles.

21) The Reinterpretation was not embodied in an official directive of the Ohio Secretary of State.

22) There is no evidence that Defendant undertook any rule-making procedures, as required by O.R.C. §§ 111.15 and 119.03, in promulgating his Reinterpretation of O.R.C. § 3503.011.

23) The Reinterpretation is anchored in the pretextual rationale that "presidential delegates . . . are elected and not nominated" -- referring to the Prior Directive's distinction that Threshold Voters are permitted to vote "solely on the nomination of candidates."

24) Voters in the presidential primaries do not vote for specific delegates, but instead choose between presidential candidates. Behind the scenes, votes cast for these presidential candidates are treated as votes cast for convention delegates pre-selected by the presidential candidates. The delegate system is hidden from voters by design.

25) On December 31, 2015, Defendant issued Directive 2015-42, publishing the certified forms of the official ballots to be used in the State of Ohio's March 15, 2016 primary

6

elections. True and correct copies of the certified ballots for the 2016 Democratic Party and Republican Party Primaries are annexed hereto as "Exhibit 2" (the "2016 Primary Ballots").

26) As evidenced by the 2016 Primary Ballots, voters cannot see the identities of delegates, and cannot cast votes for specific delegates.

27) The Threshold Voter Law does not distinguish between primary elections in which candidates are nominated directly and primary elections in which candidates are nominated indirectly via the "election" of proxy delegates. In fact, the Threshold Voter Law states that a 17 year old who will be 18 by the time of the next general election may vote in a "primary election." O.R.C. § 3503.011. Ohio's Election Procedure statute provides that a presidential primary election is a primary election. O.R.C. § 3501.01(E)(2).

28) The Prior Directive states that the Threshold Voter Law permits Threshold Voters to vote "solely on the nomination of candidates." But the Prior Directive, like the Threshold Voter Law, does not distinguish between primary elections in which candidates are nominated directly and primary elections in which candidates are nominated indirectly via the "election" of proxy delegates.

29) As implemented by the administration that issued it, the Prior Directive permitted Threshold Voters to vote in presidential primaries. At the time the Prior Directive was issued, Ohio used the same system of proxy delegates for selecting presidential nominees that remains in place today.

30) Upon information and belief, Ohio has used this system of proxy delegates in presidential primaries since at least 1908. *See State ex. rel. Webber v. Felton*, 77 Ohio St. 554, 84 N.E. 85 (1908).

31) Upon information and belief, Threshold Voters have been permitted to vote in presidential primaries since the enactment of the Threshold Voter Law in 1981.

32) Defendant is using the Prior Directive to limit the Threshold Voter Law in a way that contradicts Ohio statutory law, and that was never intended by the Ohio legislature. Defendant's Reinterpretation is contrary to legislative intent and violates Plaintiffs' constitutional rights of equal protection and due process.

33) Defendant has not articulated any other rationale for excluding Threshold Voters from the presidential primaries.

34) Defendant has not taken the position that Threshold Voters are unqualified to vote in the presidential primaries, nor could Defendant plausibly take this position.

35) Ohio statute and Defendant's interpretations of Ohio statute permit Threshold Voters to vote in most other primaries, including primaries to nominate candidates for federal congressional elections.

36) Defendant's Reinterpretation arbitrarily excludes Threshold Voters from presidential primaries based on the pretext that the nomination process in presidential primaries is conducted indirectly through a system of "elected" delegates.

*Ohio's Primary Delegate System*

37) The "election" of party convention delegates during primary elections is not an election in any meaningful sense of that word, but a formality by which electoral voters designate proxies to represent their votes for party nominees at the parties' national conventions.

38) Convention delegates do not hold public office, do not exert control within their respective parties, do not have their own political platforms, and do not have political autonomy.

39) Pursuant to O.R.C. § 3513.151, delegates' identities are unknown to voters, and are not disclosed on the primary ballots seen by voters.  Instead, "[s]uch candidates shall be represented on the ballot by their stated first choice for president."  Id. In other words, primary voters are voting to identify their first choice for presidential candidate.

40) The 2016 Primary Ballots do not identify convention delegates by name or enable electoral voters to choose specific delegates.

41) The form 2016 Primary Ballots ballots issued by Defendant's office have been adopted in substantially unmodified form by all County Boards of Elections in the State of Ohio.

42) By way of example, Cuyahoga County's sample ballot for the March 15, 2016 Democratic primary election is annexed hereto as "Exhibit 3," Franklin County's sample ballot for the March 15, 2016 Democratic primary is annexed hereto as "Exhibit 4," Hamilton County's sample ballot for the March 15, 2016 Democratic primary is annexed hereto as "Exhibit 5," and Lake County's sample ballot for the March 15, 2016 Democratic primary is annexed hereto as "Exhibit 6."

43) Electoral voters in the State of Ohio cannot determine the identities of convention delegates, much less cast their votes based on the identities of those delegates.  Electoral voters may choose between presidential nominees listed on the ballot, which results in the hidden selection of anonymous delegates.

44) The 2016 Primary Ballots instruct voters to select "not more than 1" of the presidential primary candidates listed.  Exh. 2.  In the case of the Democratic Primary Ballot, voters are instructed to choose between Bernie Sanders, Hillary Clinton and Roque "Rocky" de la Fuente.  Id.

45) By design of O.R.C. § 3513.151, as reflected by the 2016 Primary Ballots, primary voters cast votes for their parties' respective presidential nominees, not for hidden "delegates" of whom most voters are, upon information and belief, unaware.

*The Impact of the Reinterpretation*

46) Defendant's Reinterpretation of O.R.C. § 3503.011 draws an arbitrary distinction among individuals eligible to vote in the 2016 general election: individuals who were 18 years or older at the time of the March 15, 2016 primary enjoy full voting rights, while Threshold Voters are prevented from participating in primaries, and thereby denied the right to nominate candidates for the general election ballot.

47) Threshold Voters have already begun to suffer the impact of the Reinterpretation, as they are actively being denied the right to cast presidential primary votes in the State's early voting process, which is already underway.

48) According to a March 1, 2016 news release by Defendant's office (*available at* http://www.sos.state.oh.us/sos/mediaCenter/2016/2016-03-01.aspx) nearly 70,000 absentee ballots had been cast by early voters as of that date.

49) Defendant has issued instructions in the form of a "Quick Reference Guide for March 15, 2016" to Ohio Precinct Election Officials (the "PEO Instructions"), a true and correct copy of which is annexed hereto as "Exhibit 7."

50) The PEO Instructions direct election officials to physically segregate the absentee ballots of early-voting Threshold Voters "from the other regular ballots so that the board can review the ballot to ensure that no votes for which the 17-year-old voter is ineligible to cast are counted." Exh. 7, p. 13.

51) The foreseeable consequence of Defendant's Reinterpretation is that Threshold Voters will be less mobilized and less likely to vote in the 2016 general election, having played no part in the selection of candidates for the general election ballot.

52) According to the 2010 United States Census data, African-American and Latino individuals account for approximately 20.38% of Ohio's total population between the ages of 15 to 17, while non-Latino Caucasians account for approximately 79.34% of the same age cohort.

53) The 2010 United States Census reveals similar figures for individuals in the 18 to 19 age cohort, with approximately 20.46% of the population in this age range identifying as African-American or Latino, and approximately 79.22% identifying as non-Latino Caucasian.

54) According to 2010 census data, the proportion of minorities decreases in each successive age cohort, such that older cohorts have lower percentages of minorities than younger cohorts.

55) For individuals age 25 to 29, approximately 18.47% of the population of Ohio identified as African-American or Latino in 2010, while 81.27% of the population identified as non-Latino Caucasian.

56) For ages 50 through 69, only approximately 11.85% of the population identified as African-American or Latino in 2010, while 87.88% identified as non-Latino Caucasian.

57) The foreseeable consequence -- and possibly the intended consequence -- of Defendant's Reinterpretation is to reduce electoral participation within the age cohort in which minority voters are represented in the highest proportions.

58) Defendant's Reinterpretation does not advance any legitimate or rational state interest.

59) Neither the Threshold Voter Law nor the Prior Directive distinguishes between primaries in which candidates are nominated directly and primaries in which candidates are nominated indirectly through proxy delegates.  This is an artificial and suspect distinction drawn for the first time by Defendant.

60) The Reinterpretation cannot be defended on grounds that it helps the state screen unqualified voters out of the election process.  The State of Ohio, through Defendant's office, permits Threshold Voters to participate in all other primary nominations, including nomination processes for the U.S. Senate and U.S. House of Representatives.  The state of Ohio, through Defendant's office, has therefore acknowledged that Threshold Voters are sufficiently qualified to vote in primaries to nominate candidates for nationwide general elections.

## FIRST CLAIM

*42 U.S.C. § 1983: Denial of 14th Amendment Equal Protection Rights*
*Injunctive and Declaratory Relief*

61) Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

62) The Constitution of the United States, through *inter alia* the First, Fourteenth, Fifteenth, Nineteenth, Twenty-Fourth and Twenty-Sixth Amendments, protects the right of all qualified citizens to vote.

63) Once a state grants a voting franchise to the electorate, it may not draw lines among enfranchised voters inconsistent with the Equal Protection Clause of the Fourteenth Amendment.

64) The Equal Protection Clause prohibits government officials from implementing electoral systems that arbitrarily discriminate between categories of similarly situated voters.

65) Prior to Defendant's Reinterpretation of the Threshold Voter Law, Threshold Voters were enfranchised to vote on equal terms with other voters, and were given the right to nominate presidential candidates in the State of Ohio's March 15, 2016 primaries.

66) Further, Threshold voters and voters who are 18 by natural age on the day of the primary are similarly situated. Both types of voters will be 18 at the time of the general election. But only the natural age 18 year olds are eligible to vote in the primary under Defendant's directive.

67) Acting under color of state law, Defendant has promulgated a Reinterpretation of the Threshold Voter Law that arbitrarily revokes the right of Threshold Voters to participate in presidential primaries.

68) Acting under color of state law, Defendant has arbitrarily discriminated between Threshold Voters and other individuals eligible to vote in the general election, based on the happenstance of the calendar month in which Threshold Voters were born.

69) Acting under color of state law, Defendant has promulgated a Reinterpretation of the Threshold Voter Law that debases and dilutes the Threshold Voters' votes in the general presidential election.

70) The arbitrary distinction drawn by Defendant's Reinterpretation has no rational basis and does not advance any legitimate state interest.

71) Defendant's Reinterpretation is not consistent with the Defendant's obligation, acting under color of state law, to avoid arbitrary and disparate treatment of the electorate enfranchised by the State of Ohio.

72) Defendant's Reinterpretation is unsupported by and contrary to the text of the Voter Threshold Law, and the intent of the Prior Directive as implemented by the administration that issued the Prior Directive.

73) Defendant's Reinterpretation cannot be defended on grounds that it safeguards the electoral process from unqualified voters. State law grants Threshold Voters the right to vote in other primary elections, and has judged Threshold Voters to be qualified to vote in such elections.

74) The Individual Plaintiffs will suffer irreparable harm if they are not permitted to vote in the March 15, 2016 presidential primaries, and the Campaign will suffer irreparable harm if the presidential primaries are tainted by electoral unfairness. These rights cannot be restored once lost and cannot be compensated by any award of monetary damages. Plaintiffs therefore respectfully request:

a) That the Court enjoin Defendant from precluding participation by Threshold Voters in the March 15, 2016 presidential primaries; and

b) That the Court grant a declaratory judgment, declaring that Defendant may not arbitrarily discriminate between Threshold Voters and other similarly situated voters in the general election, by curtailing the voting rights of Threshold Voters to participate in the March 15, 2016 presidential primaries.

## SECOND CLAIM

*42 U.S.C. § 1983: Denial of 14th Amendment Procedural Due Process Rights*
*Injunctive and Declaratory Relief*

75) Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

76) Until Defendant promulgated the Reinterpretation, Ohio's Threshold Voter Law guaranteed Threshold Voters the right to vote in presidential primary elections.

77) Upon information and belief, neither Defendant, nor anyone acting on Defendant's behalf provided any meaningful notice, opportunity to be heard, or opportunity to raise objections to Defendant's Reinterpretation of the Threshold Voter Law.

78) Upon information and belief, no appreciable procedure was observed at any time leading up to Defendant's promulgation of the Reinterpretation.

79) Defendant has proffered no justification or legitimate government interest to be advanced by the Reinterpretation.

80) By promulgating, under color of state law, a Reinterpretation that has the force of law without any appreciable procedure, notice, or opportunity to be heard, Defendant has deprived Threshold Voters of their electoral franchise, and of fundamental voting rights, without Due Process of the law as required by the Fourteenth Amendment.

81) Defendant has rule-making authority pursuant to O.R.C. §§ 111.15 and 119.03. Both §§ 111.15 and 119.03 involve formal, procedural requirements -- including a public hearing in the case of § 119.03 -- which Defendant failed to observe.

82) Defendant has not indicated what, if any, authority he purported to exercise in promulgating the Reinterpretation. But Defendant has *a fortiori* failed to provide whatever process is due in this instance, because Defendant has undertaken no procedure or process at all.

83) Defendant's failure to observe any semblance of procedure or process violates the Due Process Clause of Fourteenth Amendment.

84) The Individual Plaintiffs will suffer irreparable harm if they are not permitted to vote in the March 15, 2016 presidential primaries, and the Campaign will suffer irreparable harm if the presidential primaries are tainted by electoral unfairness. These rights cannot be restored

once lost and cannot be compensated by any award of monetary damages.  Plaintiffs therefore respectfully request:

        a)     That the Court enjoin Defendant from precluding participation by Threshold Voters in the March 15, 2016 presidential primaries; and

        b)     That the Court grant a declaratory judgment, declaring that Defendant, having granted Threshold Voters rights of participation in presidential primary elections, may not revoke this political right arbitrarily and without due process of law.

### THIRD CLAIM

*52 U.S.C. § 10301: Voting Rights Act of 1965, Section 2*
*Injunctive and Declaratory Relief*

85)    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

86)    Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, provides, in relevant part:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color. . .
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

87)    Defendant's Reinterpretation of the Threshold Voter Law as inapplicable to presidential primaries disproportionately abridges and denies – and, unless enjoined, will continue to disproportionately abridge and deny -- the voting rights of African-Americans and Latinos in Ohio.

88) According to 2010 United States Census data, African-Americans and Latinos in the State of Ohio are represented in the greatest numbers in younger age cohorts, including the 15- to 17-year-old age cohort.

89) African-Americans and Latinos represent a larger proportion of the Threshold Voter demographic than these groups represent in the general voting population.

90) The foreseeable consequence of the Reinterpretation will be to discourage and decrease the participation of Threshold Voters in the November 8, 2016 general elections, thereby decreasing participation of African Americans and Latinos in the general election.

91) African-Americans and Latinos in Ohio have suffered from, and continue to suffer from, discrimination in the electoral processes in the State of Ohio and its political subdivisions, as well as the effects of discrimination in areas such as employment, housing, and education that affect their ability to participate in the political process.

92) The Reinterpretation of the Threshold Voter Law will interact with social and historical conditions -- including disparities due to discrimination in areas such as education, employment, housing, health services, and voting -- to cause an inequality in the opportunities enjoyed by African-American and Latino voters to nominate and elect their preferred representatives.

93) Under the totality of the circumstances, the Reinterpretation of the Threshold Voter Law will result in less opportunity for African-Americans and Latinos to participate in the political process, and to nominate and elect candidates of their choice.

94) The Individual Plaintiffs will suffer irreparable harm if they are not permitted to vote in the March 15, 2016 presidential primaries, and the Campaign will suffer irreparable harm if the presidential primaries are tainted by electoral unfairness. These rights cannot be restored

once lost and cannot be compensated by any award of monetary damages. Plaintiffs therefore respectfully request:

      a)      That the Court enjoin Defendant from precluding participation by Threshold Voters in the March 15, 2016 presidential primaries; and

      b)      That the Court grant declaratory judgment, declaring that Defendant may not arbitrarily discriminate between Threshold Voters and other voters in the general election, by curtailing the voting rights of Threshold Voters to participate in the March 15, 2016 presidential primaries.

## FOURTH CLAIM

*42 U.S.C. § 1983: Denial of 26th Amendment Right to Vote*
*Injunctive and Declaratory Relief*

95)    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

96)    The 26th Amendment to the U.S. Constitution guarantees the right to vote to all citizens 18 years of age or older, stating specifically that "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

97)    Ohio law provides that "every qualified elector who is or will be on the day of the next general election eighteen or more years of age . . . shall be entitled to vote such ballot at the primary election." O.R.C. § 3503.011.

98)    Ohio law therefore defines who is "eighteen years of age or older" for purposes of the 26th Amendment, and defines Ohio citizens' "right to vote" to include the constituent right to vote a primary ballot in a primary election.

99)    Under Ohio law a "presidential primary election" is a "primary election." Ohio Revised Code. 3501.01(E)(2).

100) Under Ohio law, therefore, an individual who is 17 years of age by birth date, but will be 18 years of age by the time of the next general election, is legally 18 years old for purposes of exercising the Constitutional right to vote in primary elections.

101) By denying the right to vote to individuals who are legally 18 years of age (for voting purposes) according to the Ohio Revised Code, Defendants has abridged the voting rights of citizens who are eighteen years of age or older, as determined by Ohio law.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs Emma Schubert, Graham Roper Ball, Carver Wolfe and Bernie 2016, Inc. respectfully request that judgment be entered against Defendant Jon Husted, individually and in his capacity as Secretary of State for the State of Ohio, granting temporary, preliminary, and permanent injunctive relief pursuant to Fed. R. Civ. P. 65:

A. On the first, second, third, and fourth causes of action, enjoining Defendant from preventing Threshold Voters from participating in the presidential primaries scheduled to take place on March 15, 2016;

B. On the first, third, and fourth causes of action, granting declaratory judgment in Plaintiffs' favor, declaring that Defendant may not arbitrarily discriminate between Threshold Voters and other voters in the general election, by curtailing the voting rights of Threshold Voters without any rational basis;

C. On the second cause of action, granting declaratory judgment in Plaintiffs' favor, declaring that Defendant, having granted Threshold Voters rights of participation in presidential primary elections, may not revoke this political right arbitrarily and without due process of law; and

    D.      For such other, further and different relief as the Court deems just and proper.

Dated: March 8, 2015

          Respectfully submitted,

          KEGLER BROWN HILL & RITTER

          By: /s/ Robert G. Cohen
              Robert G. Cohen, Esq.
              Jason Beehler, Esq.

          *Attorneys for Plaintiffs*
          65 E. State Street, Suite 1800
          Columbus, OH 43215
          (614) 462-5400
          rcohen@keglerbrown.com
          jbeehler@keglerbrown.com

          GARVEY SCHUBERT BARER

          By: /s/ Malcolm Seymour
              Malcolm Seymour III, Esq.

          *Pro Hac Vice Admission Pending*

          *Of Counsel to Plaintiffs*
          100 Wall Street
          20th Floor
          New York, NY 10005
          (212) 965-4533
          mseymour@gsblaw.com