## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **RANDY SMITH, as next friend of** } | |
| **MALIK TREVON SMITH, a minor, et al.** } | |
| } | Case No. 2:16-cv-212 |
| *Plaintiffs* } | |
| } | |
| **v.** } | Judge Smith |
| } | |
| **JON HUSTED** } | |
| } | |
| *Defendant.* } | |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Fed.R.Civ.P. 65, Plaintiffs hereby move for a Temporary Restraining Order against Defendant Jon Husted, individually and in his capacity as Secretary of State for the State of Ohio as follows:

A.   Enjoining and restraining Defendant from preventing Threshold Voters (as defined in the attached Memorandum in Support) from participating in the presidential primaries scheduled to take place on March 15, 2016;

B.   For such other, further and different relief as the Court deems just and proper.

The reasons for this motion are set forth more fully in the accompanying Memorandum in Support.

Respectfully submitted,

KEGLER BROWN HILL & RITTER

By: /s/ Robert G. Cohen
      Robert G. Cohen, Esq. (0041707)

1

Jason Beehler, Esq. (0085337)

*Attorneys for Plaintiffs*
65 E. State Street, Suite 1800
Columbus, OH 43215
(614) 462-5400
rcohen@keglerbrown.com
jbeehler@keglerbrown.com

GARVEY SCHUBERT BARER

By: /s/ Malcolm Seymour
Malcolm Seymour III, Esq.

*Pro Hac Vice Admission Forthcoming*

*Of Counsel to Plaintiffs*
100 Wall Street
20th Floor
New York, NY 10005
(212) 965-4533
mseymour@gsblaw.com

2

## <u>TABLE OF CONTENTS & SUMMARY</u>

<u>Brief Section</u>                                                                 <u>Page Number</u>

I.      **Introduction**                                                          5

II.     **Factual Background**                                                 5

III.    **Legal Argument**                                                      11

    A.  <u>**THE FOUR FACTORS CONSIDERED IN CONNECTION**</u>    11
       <u>**WITH A REQUEST FOR INJUNCTIVE RELIEF**</u>

    B.  <u>**PLAINTIFFS WILL SUFFER IRREPARABLE HARM UNLESS A**</u>   11
       <u>**RESTRAINING ORDER IS ISSUED**</u>

    C.  <u>**A RESTRAINING ORDER AND INJUNCTION SERVES THE PUBLIC**</u>   11
       <u>**INTEREST**</u>

    D.  <u>**PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**</u>    12

       1.  **Claim 1 – Equal Protection**                        12

Threshold Voters and other voters who will be 18 on the
the date of the general election are similarly situated.

The Ohio election laws expressly provide for the right of Threshold Voters to
vote in primary elections, including the election of delegates to the
conventions of political parties.

Notwithstanding this right, the Defendant has changed the instructions to
election officials to arbitrarily and discriminatorily deny Threshold Voters the
right to vote in Ohio presidential primary elections. Defendant has no
sufficient justification for this unequal treatment.

Plaintiffs satisfy the elements of a 42 U.S.C. § 1983 claim.

       2.  **Claim 2 – Voting Rights Act**                       17

Defendant's actions will have discriminatory results
on members of a protected group.

3. **Claim 3 – Procedural Due Process**     20

Defendant's actions have deprived Plaintiffs of a
protected liberty interest without notice or opportunity
to be heard.

4. **Claim 4 – Twenty-Sixth Amendment**     23

Defendant's actions have abridged Plaintiffs'
constitutionally protected right to vote.

IV.    **Conclusion**     26

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     INTRODUCTION**

> "Other rights, even the most basic, are illusory if the right to vote is
> undermined. Our Constitution leaves no room for classification of people in a
> way that unnecessarily abridges this right."

*Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964)

This case is about Defendant's willful and unprecedented denial of Plaintiffs' right to vote under Ohio and federal law. For the reasons explained below, Defendant's actions are unconstitutional and must be enjoined.

**II.     FACTUAL BACKGROUND**

On March 23, 1981, Ohio enacted the law now codified at O.R.C. § 3503.011 (the "Threshold Voter Law") broadly granting every "qualified elector who is or will be on the day of the next general election eighteen or more years of age, and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote" ("Threshold Voters") the right to "vote such ballot at the primary election." O.R.C. § 3503.011. The Threshold Voter Law does not, on its face, distinguish between different types of primaries in which Threshold Voters are or are not permitted to vote.

In or around May, 1984, former Ohio Secretary of State Sherrod Brown published a newsletter clarifying the effect of the recently enacted Threshold Voter Law (the "Brown Newsletter"). A true and correct copy of the Brown Newsletter is annexed to the accompanying <u>Affidavit of Donald J. McTigue</u> ("McTigue Aff."), which was filed in *Schwerdtfeger v. Husted*, Franklin County Court of Common Pleas Case Number 16 CV 002346. The Brown Newsletter expressly states that

> [a] 17 year-old voter who will be 18 on or before the November 6 general election
> may vote for <u>all party candidates</u> on the Primary Election ballot. . . . The Primary
> Election is defined in Revised Code 3501.01E as an election held for nominating

5

party candidates <u>and</u> electing members of party controlling committees <u>and delegates and alternates to party conventions</u>.

On April 26, 2002, the Court of Appeals of Ohio for the Seventh District, Mahoning County, issued its decision in *State ex rel. Miller* (2002-Ohio-2072) (the "2002 Decision"). A true and correct copy of the 2002 Decision is annexed as "Exhibit 1" to the <u>Declaration of Jason H. Beehler</u> ("Beehler Decl."). The 2002 Decision narrowed the Threshold Voter Law by holding that the provision of the Threshold Voter Law permitting Threshold Voters to vote (or compete) in elections held for "electing members of party controlling committees" conflicted with Section 1, Article V of the Ohio Constitution. (<u>Beehler Decl.</u>, Exh. 1, pp. 3-4, ¶¶ 16-19.) The reasoning of the 2002 Decision helps trace the evolution of the Threshold Voter Law.

The 2002 Decision was supported by an analogy to the Ohio Supreme Court's 1908 decision in *State ex rel. Webber v. Felton*, 77 Ohio St. 554, 84 N.E. 85 (1908). The 2002 Decision held:

> The Webber court expressly stated that the constitutional provision concerning the right to vote did not apply to a primary election <u>because the purpose of such an election was to determine which candidate would represent the political party in the general election</u>. Clearly, the election for county central committeeman does not serve this purpose. <u>If a candidate for county central committeeman defeats his competitors during the primary election, he does not merely win the right to run against another competitor in the general election. Instead, he has won the "final" election for the position and is entitled to hold the public office.</u>
>
> <u>Even though the competition for county central committeeman occurs as part of the primary election during an even-numbered year, the results of the competition has the same effect as the results of a competition in the general election</u>. Under these circumstances, it follows that the provisions of R.C. 3503.011 should not be applied in deciding whether a candidate for county central committeeman is eligible to hold that position. Rather, the relevant provisions of the Ohio Constitution are controlling. (<u>Beehler Decl.</u>, Exh. 1, p. 4, ¶¶ 18-19.)

In 2004, Defendant published a 2004 Ohio Presidential Manual, which states that an "Elector" includes seventeen year-olds who will be 18 on the day of the general election, and does not prevent Threshold Voters from voting in the presidential primary. Beehler Decl. Exh. 14.

Consistent with the 2002 Decision, a Poll Worker Manual issued by the Cuyahoga County Board of Elections on or about May 8, 2007 (the "2007 Manual") states that

> [a] 17-Year-Old who is registered to vote before a Primary Election, may vote a candidate ballot in the Primary Election if he/she will be 18 years old on or before the date of the General Election. They may NOT vote on any issues on Central or State Committee Members. A true and correct copy of the 2007 Manual is annexed as "Exhibit 2" to the Beehler Declaration, with the quoted text at p. 30.

Notably, the 2007 Manual does not state that Threshold Voters may not vote in presidential primaries.

On February 5, 2008, former Ohio Secretary of State Jennifer Brunner issued Directive 2008-22 (the "Prior Directive"). A true and correct copy of the Prior Directive is annexed as "Exhibit 3" to the Beehler Declaration. The Prior Directive stated, in relevant part: "Ohio law allows [Threshold Voters] to vote solely on the nomination of candidates. This is because they will be eligible to vote for the nominees for this office at the November general election." Beehler Decl., Exh. 3, p. 1, ¶ 1. The Prior Directive did not distinguish between different types of primaries in which Threshold Voters are or are not permitted to vote. The Prior Directive did not distinguish between primaries in which candidates are nominated directly by votes of the electors, and primaries in which candidates are nominated indirectly by the election of proxy delegates, who in turn vote to nominate candidates.

Importantly, the instructions given to election officials during the 2008 election cycle did not direct election officials to prohibit Threshold Voters from voting in presidential primaries. See attached Affidavit of Antoinette Williams ("Williams Aff."), also filed in the *Schwerdtfeger* case. Ms. Williams, an official working for the previous Secretary of State during the 2008 election cycle confirms that Threshold Voters were permitted in that election to vote in presidential primaries, and that their votes were counted. Williams Aff. Awareness-raising materials created

by the Ohio Secretary of State to encourage electoral participation by 17-year-old voters do not state that Threshold Voters were prohibited from voting in presidential primaries. Beehler Decl., Exh. 4. To the contrary, these materials state that

> The <u>only</u> things 17-year-olds can't vote on at the primary are one-time questions on issues like school levies or statewide ballot issues. In addition, 17 year-olds are not permitted to vote on the election of state or county central committee persons. *Id*.

As such, informational materials published by the Ohio Secretary of State contemporaneously with the 2008 election cycle provide an exhaustive list of subjects on which Threshold Voters were not at that time permitted to vote. This exhaustive list did not state that Threshold Voters were prohibited from voting in presidential primary elections.

In or around November, 2010, former Secretary of State Brunner published a Poll Worker Manual for November 2010 (the "2010 Manual"). A true and correct copy of the 2010 Manual is annexed as "Exhibit 5" to the <u>Beehler Declaration.</u> The portions of the 2010 Manual pertaining to Threshold Voters state that "[i]f this is an even-numbered year primary election, in addition to not being able to vote on questions and issues on the ballot, the seventeen-year-old voter cannot vote on the election of a political party's state central or county central committee members." *Id*. p. 31. The 2010 Manual does not state that Threshold Voters are unable to vote in presidential primaries.

In or around March, 2012, Defendant published a Precinct Election Official Manual for March 2012 (the "2012 Manual"). A true and correct copy of the 2012 Manual is annexed as "Exhibit 6" to the <u>Beehler Declaration.</u> Departing from the Brown Newsletter, the 2002 Decision, the 2007 Manual, the 2008 Directive, and the 2010 Manual, the Defendant's 2012 Manual stated the following for the first time (the "Threshold Voter Exclusion"):

> A 17-year-old elector, who will be 18 years of age on or before the next general election, may vote only on the nominations of candidates at the primary election. This is because they will be eligible to vote at the general election for the candidate(s) nominated by the primary election for these offices.

8

- A 17-year-old, may NOT vote on:
- At large or district presidential delegates and alternate delegates to a political party's nominating convention, if a presidential primary election;
- County Party Central Committee persons;
- State Party Central Committee persons; or
- Any question or issue on the primary election ballot, such as a school tax levy, charter amendment, or local liquor option. Id. p. 29 (emphasis added).

The 2012 Manual purported to extend the 2002 Decision's prohibition on Threshold Voters voting for "party central committee persons" to "district presidential delegates and alternate delegates to a political party's nominating convention, if a presidential primary election." *Id*. However the reasoning of the 2002 Decision is plainly inapposite in the context of presidential primary elections, the purpose of which is to nominate candidates for the general election (not elect party committee members). Simply put, when a voter walks into a primary polling location, what he or she sees on the ballot are the names of the presidential candidates, not the names of delegates. Beehler Decl., Exhs. 11-15.

In or around December, 2015, Defendant published a 2015 Election Official Manual (the "2015 Manual"). A true and correct excerpt of the relevant passages of the Election Manual is annexed as "Exhibit 7" to the Beehler Declaration. Deep within the Election Manual (page 314, or page 7-6 within the Election Manual's internal pagination), Defendant provided instructions to precinct election officials (the "2015 Instructions") consistent with those in the 2012 Manual, but departing from all Manuals, Decisions, Directives and Newsletters relating to the Threshold Voter Law, prior to Defendant's administration. *See* Beehler Decl., Exhs. 1 through 5. The 2015 Instructions state, in relevant part, that "[i]n presidential primary elections, a 17-year-old voter is not permitted to vote for presidential delegates, because delegates are elected and not nominated." Beehler Decl., Exh. 7. By contrast, the 2015 Guide to Voting published by Defendant (the "2015 Voter Guide") nowhere places Threshold Voters on notice that they are unable to vote in

presidential primaries. A true and correct copy of the 2015 Voter Guide is annexed as "Exhibit 8" to the <u>Beehler Declaration</u>. True and accurate copies of various sample ballots, on which the names of the candidates (not delegates) appear, are attached as Exhibits 11-15 to the Beehler Decl.

Each of the individual Plaintiffs (the "Minor Plaintiffs") is a Threshold Voter who will be adversely impacted by the Threshold Voter Exclusion in the 2016 election cycle.  The Minor Plaintiffs are each United States Citizens and residents of the State of Ohio. *See attached* <u>Declaration of Kyle Anne Boyle</u> ("Boyle Decl.") at ¶¶ 2-3; <u>Declaration of Carver Wolfe</u> ("Wolf Decl.") at ¶¶ 2-3; <u>Declaration of Zephaniah Galloway</u> ("Galloway Decl.") at ¶¶ 2-3; <u>Declaration of Emma Schubert</u> ("Schubert Decl.") at ¶¶ 2-3; <u>Declaration of Graham Roper Ball</u> ("Ball Decl.") at ¶¶ 2-3. Each of the Minor Plaintiffs is currently 17 years of age, but will turn 18 prior to the November 2016 presidential election. <u>Boyle Decl.</u> at ¶ 4; <u>Wolfe Decl.</u> at ¶ 4; <u>Galloway Decl.</u> at ¶ 5; <u>Schubert Decl.</u> at ¶ 4; <u>Ball Decl.</u> at ¶ 4. Minor Plaintiff Zephaniah Galloway is of African-American descent. <u>Galloway Decl.</u> at ¶ 4. The Minor Plaintiffs each planned to vote in the Ohio presidential primaries on March 15, 2016, until they learned that Ohio now prohibits them from doing so. <u>Boyle Decl.</u> at ¶ 6; <u>Wolfe Decl.</u> at ¶ 6; <u>Galloway Decl.</u> at ¶ 7; <u>Schubert Decl.</u> at ¶ 6; <u>Ball Decl.</u> at ¶ 5. The Minor Plaintiffs hope to vote in the November 2016 general presidential election, but feel that their vote has been diminished because they have no say in which candidates will appear on the ballot. <u>Boyle Decl.</u> at ¶ 5; <u>Wolfe Decl.</u> at ¶ 5; <u>Galloway Decl.</u> at ¶ 8; <u>Schubert Decl.</u> at ¶ 5; <u>Ball Decl.</u> at ¶ 7.

The full extent of Defendant's Reinterpretation did not become widely known to the public until press reports and public statements were made the weekend of March 5-6, 2016, and as voters reported issues with early voting.

10

## III.   LAW AND ARGUMENT

### A.  THE FOUR FACTORS CONSIDERED IN CONNECTION WITH A REQUEST FOR INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury. "A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an injunction is in the public interest." *Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).

### B.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM UNLESS A RESTRAINING ORDER IS ISSUED

Voting is a fundamental right, in large part because it is, "preservative of all rights." *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370) (1886)). "A restriction on the fundamental right to vote therefore constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir.1986)).

### C.  A RESTRAINING ORDER AND INJUNCTION SERVES THE PUBLIC INTEREST

Although states have "a strong interest in their ability to enforce state election law requirements," *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011), the public has a "strong interest in exercising the fundamental political right to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (quoting *Dunn*, 405 U.S. at 336, 92 S.Ct. 995). "That interest is best served by favoring enfranchisement and ensuring that qualified

voters' exercise of their right to vote is successful." *Hunter*, 635 F.3d at 244. The public interest therefore favors permitting as many qualified voters to vote as possible.

### D.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

#### 1.  CLAIM 1 - EQUAL PROTECTION

Plaintiffs are likely to succeed on the merits of their Equal Protection claim, because Defendant's interpretation of O.R.C. § 3503.011 results in unequal treatment of similarly situated voters and violates the Equal Protection Clause of the United States Constitution. The Fourteenth Amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Ohio Revised Code §3503.011 provides:

> At a primary election every qualified elector who is or will be on the day of the next general election eighteen or more years of age, and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote, shall be entitled to vote such ballot at the primary election.

R.C. §3503.011 makes no distinction between the presidential primary election and the primary election of other candidates.

The Ohio Revised Code also defines "primary election":

> "Primary" or "primary election" means an election held for the purpose of nominating persons as candidates of political parties for election to offices, and for the purpose of electing persons as members of the controlling committees of political parties and as delegate and alternates to the conventions of political parties.  Primary elections shall be held on the first Tuesday after the first Monday in May of each year except in years in which a presidential primary election is held.

12

R.C. §3501.01. The express language of the Ohio Revised Code is clear and unequivocal. Threshold Voters are entitled to vote in the 2015 party primary elections for all party candidates, including President of the United States.

Notwithstanding this clear grant of voting rights by the Ohio Legislature, the Defendant is interpreting the Ohio voting laws and instructing election officials through the 2015 Manual that presidential primary elections are not primary elections, and that Threshold Voters are therefore not permitted to vote in presidential primary elections in Ohio. (2015 Election Official Manual at 7-6; Beehler Decl., Exh. 9.) (Emphasis in original; footnotes omitted from quotation.) The Defendant's instructions continue to allow Threshold Voters to vote in other primary elections, including those for the United States Senate and House of Representatives.

The practical effect of the Defendant's Reinterpretation of the voting laws is that not all voters who will be eighteen at the time of the November, 2016 general election are being treated equally. Threshold Voters are denied the opportunity to vote in the 2016 presidential primary election. Voters who are eighteen on the date of the primary and also eighteen on the date of the general election are permitted to vote in the 2016 presidential primary election. This unequal treatment violates the law.

The inequality of treatment does not arise out of the Ohio statute. O.R.C. § 3501.01(E)(1) clearly and expressly defines a "primary" and a "primary election" to include the election of delegates to conventions of political parties. O.R.C. § 3503.011, in turn, clearly and expressly states that Threshold Voters are entitled to vote their party's primary election ballot at the primary election. Thus, Ohio's duly enacted statutory voting laws treat equally Threshold Voters and voters who are 18 both at the time of the primary election and at the time of the general election. Defendant's instructions, however, result in unequal treatment of these two groups,

despite the fact that the statutes themselves leave no room for the interpretation the Defendant is imposing upon those who conduct Ohio's primary elections.

The United States Court of Appeals for the Sixth Circuit has recognized the numerous decisions from the U.S. Supreme Court that espouse both the extraordinary importance of the right to vote, as well as the right to vote upon equal terms with others:

> "The right to vote is a 'precious' and 'fundamental' right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 [] (1966). . . . "'The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.'" *League of Women Voters v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) (quoting *Bush v. Gore*, 531 U.S. 98, 104 [] (2000)). . . . "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05, []; *see also Wesberry*, 376 U.S. at 17 [] ("Our Constitution leaves no room for classification of people in a way that unnecessarily abridges [the right to vote.]").

*Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (parallel citations omitted from quotation). In the *Obama for America* case, the Sixth Circuit held that "[t]he Equal Protection Clause applies when a state either classifies voters in disparate ways . . . or places restrictions on the right to vote." *Id.* When state conduct "'severely' burdens the fundamental right to vote . . . strict scrutiny is the appropriate standard" for evaluation of the conduct. *See id.* at 429. Here, the Defendant's instructions to polling workers entirely eliminate the right of the individual plaintiffs to vote. Accordingly, strict scrutiny of the Defendant's instructions is appropriate.

If Plaintiffs can demonstrate that the elimination of their voting rights "is not sufficiently justified," then they have established their likelihood of success on the merits of their Equal Protection Clause claim. *Id.* at 432. The only justification offered by the Defendant of which the Plaintiffs are aware is that Ohio statutory law precludes Threshold Voters from voting in the presidential primary election. The Court need only review O.R.C. § 3501.01(E)(1) and §3503.011 to reject this justification as a matter of law. Further, any claim that the Threshold Voters are not

14

qualified to vote in the presidential primary election is eliminated by the fact that even the Defendant's instructions allow Threshold Voters to vote in the other primary election races, including the process of nominating party candidates for the United States Congress.

### a.) Threshold Voters And Other Voters Who Will Be 18 On The Date Of The General Election Are Similarly Situated

In the *Obama for America* case, the issue was whether Secretary of State Husted's enforcement of Ohio voting laws and his directives regarding early voting violated the Equal Protection Clause. Husted interpreted Ohio's voting laws to allow more generous early voting opportunities for military and overseas voters than it did for all other voters. *Obama for America,* 697 F.3d at 427. The plaintiffs claimed that this unequal treatment lacked sufficient justification and therefore violated the Equal Protection Clause. This Court held in that case that application of the voting law in question violated the Equal Protection Clause and granted injunctive relief. *Id*. at 425. The Sixth Circuit affirmed, holding that injunctive relief was appropriate to assure that all Ohio voters – military members, overseas voters, and non-military voters – received the same early voting opportunities. *Id*. at 437.

One of the arguments advanced by Husted in the *Obama for America* case was that the military and other overseas voters were not similarly situated to other Ohio voters for purposes of an Equal Protection Clause analysis. *Id.* at 435. However, the Sixth Circuit rejected this argument, noting that while overseas and military voters may be different from other Ohio voters in "many respects," there is no relevant distinction between the two groups with respect to in-person early voting. *Id.* Yet the Ohio statute and directives at issue in that case treated these groups differently for purposes of in-person early voting. Like the *Obama for America* case, to the extent that there are any differences between Threshold Voters and other Ohio voters who will be eighteen years old on the date of the general election in 2016, these two groups are similarly situated for purposes

15

of voting in the 2016 primary election.  Moreover, the Ohio statutory law recognizes them as identical for purposes of eligibility to vote in the primary presidential election.  Nevertheless, the Defendant's instructions to election officials allow the eighteen year olds to vote in the presidential primary election, but not the Threshold Voters.

In *Williams v. Salerno*, 792 F.2d 323 (2nd Cir. 1986), the United States Court of Appeals for the Second Circuit found that the refusal to register student voters who listed university dormitories as their residence violated the Equal Protection Clause.  The election officials who denied the registrations claimed to be interpreting state law residency requirements.  While the court found that the state's residency laws were facially neutral, it held that such laws were being administered unconstitutionally through the imposition of an irrebuttable presumption against student residency.  Accordingly, the court held that students were being subjected to a different substantive standard than was applied to other applicants generally.  *Id.* at 328.  The court upheld the imposition of injunctive relief to prevent the refusal to register student voters, stating:  "When [] a misapplication occurs in the administration of the election law, it is well within the jurisdiction of the federal judiciary to enjoin impermissible discriminatory practices."  *Id.* at 328.  The court noted that "[t]he registration applicants . . . would certainly suffer irreparable harm if their right to vote were impinged upon."  *Id.* at 326.  *See also Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969) (holding that a statute requiring a person to own or lease taxable property in the school district or be the parent of a child enrolled in the local schools in order to vote in school district elections violated the Equal Protection Clause by granting the right to vote to some citizens of requisite age and citizenship, while denying it to others in the absence of any compelling state interest justifying such unequal treatment).

16

### b.) <u>The Elements Of A 42 U.S.C. § 1983 Claim Are Satisfied</u>

The two elements of a 42 U.S.C. § 1983 claim are:  (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law.  *League of Women Voters v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). It is axiomatic that an Ohio Secretary of State's instruction to election officials regarding voter eligibility in the context of how to conduct an election constitutes state action.  *See, e.g., League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008); *see also Hunter v. Hamilton Cty. Bd. of Elections*, Case Nos. 10-4481, 11-3059 and 11-3060 (6th Cir., Jan. 27, 2011) (holding that Board of Elections' conduct in reviewing and counting provisional ballots constituted actions taken under color of state law).  It is similarly beyond dispute that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Bush v. Gore*, 531 U.S. 98, 104-105 (2000).[1]  In this case, the Ohio Legislature clearly and unequivocally granted Threshold Voters the right to vote in presidential primary elections – a right equal to that of other voters who are eighteen years of age on the date of the general election.  *See* R.C. § 3503.011 and § 3501.01(E)(1). The Defendant's conduct, however, is instructing Ohio poll workers to take that right away from some, but not all, similarly situated voters.

The Defendants' unequal treatment of Threshold Voters lacks sufficient justification and is contrary to applicable state law. The result is that eligible voters are arbitrarily and discriminatorily denied their right to vote. This result compels the imposition of immediate injunctive relief to protect the Plaintiffs' right to vote.

---

[1] These same elements of a §1983 claim are relevant and are met with respect to the Due Process and 26th Amendment claims set forth in the Complaint.

### 2.  <u>CLAIM 2 – VOTING RIGHTS ACT</u>

Plaintiffs are likely to succeed on the merits regarding their claim under Section 2 of the Voting Rights Act of 1965 (the "VRA").  According to an interpretation of 2010 United States Census data, African-Americans and Latinos in the State of Ohio are represented in the greatest numbers in younger age cohorts, including the 15- to 17-year-old age cohort, and their opportunity to participate in the political process would be denied or abridged.

Section 2 of the VRA provides a clear rule – regardless of the reasons why a state chooses to change a voting practice, the change is forbidden if it "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a) (formerly codified at 42 U.S.C. § 1973(a)).  By the plain terms of the statute:

> A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by" citizens of protected races "in that [they] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.  52 U.S.C. § 10301(b).

Under Section 2 as it exists today, showing intentional discrimination is unnecessary. *Moore v. Detroit Sch. Reform Bd.,* 293 F.3d 352, 363 (6th Cir. 2002).  Instead, a Section 2 violation can be established by proof of discriminatory *results* on members of a protected group.  *Id.*: see also *Chisom v. Roemer*, 501 U.S. 380, 404 (1991).  Thus, the Section 2 inquiry "is whether 'as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Thornburg v Gingles*, 478 U.S. 30, 44 (1986).  As explained by the Sixth Circuit, the Supreme Court has said that in interpreting this Act, we should read it in "a manner that provides the broadest possible scope in combating racial discrimination." *Stewart v Blackwell*, 444 F.3d 843, 877 (6th Cir. 2006), *superseded as moot,* 473 F.3d 692 (6th Cir. 2007) (quoting *Chisom*, 501 U.S. at 403).

"The essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg*, 478 U.S. at 47. Whether the political processes are equally open depends upon a searching practical evaluation of the past and present reality. *Id.* at 78.

The Sixth Circuit has, in the past, recognized Ohio District Court evidence that a large number of Ohio voters have utilized early voting procedures since 2006, that data from Ohio's largest counties suggests that early voters are disproportionately African-American, and that such votes take place in large part on weekends and after business hours, as supporting an Equal Protection. *Obama for America v. Husted*, 697 F.3d 423, 426 (2012).

According to the 2010 United States Census data, African-American and Latino individuals account for approximately 19.36% of Ohio's total population between the ages of 15 to 17, while non-Latino Caucasians account for approximately 74.17% of the same age cohort.[2] See attached Affidavit of Benjamin Liebowitz ¶¶ 3-7 (explaining the process by which the demographic data set cited herein was determined). Similarly, for individuals in the 18 to 19 age cohort, approximately 19.49% of the population in this age range identify as African-American or Latino, and approximately 74.31% identify as non-Latino Caucasian. The data supports the strong inference that the proportion of minorities decreases in each successive age cohort, so that younger cohorts have higher percentages of minorities than older cohorts.

---

[2] Data calculations herein were produced using Census Viewer (www.censusviewer.com) using data from the U.S. Census Bureau. Plaintiffs note that in cases involving expedited review of constitutional claims regarding fundamental voting rights, even the U.S. Supreme Court has taken judicial notice of information from sources as the AP-Online and the Omaha World Herald. *Bush v. Gore*, 531 U.S. 98, 103 (2000).

For individuals age 25 to 29, approximately 17.49% of the population of Ohio identified as African-American or Latino in 2010, while 75.91% of the population identified as non-Latino Caucasian. For ages 50 through 69, only approximately 11.62% of the population identified as African-American or Latino in 2010, while 85.77% identified as non-Latino Caucasian.

African-Americans and Latinos represent a larger proportion of the Threshold Voter demographic than these groups represent in the general voting population. The foreseeable consequence of the Defendant's adoption of a new interpretation of the Threshold Voter Law in the 2015 Manual (the "Reinterpretation") will be to discourage and decrease the participation of Threshold Voters in the November 8, 2016 general elections, thereby decreasing participation of African-Americans and Latinos in the general election.

African-Americans and Latinos in Ohio have suffered from, and continue to suffer from, discrimination in the electoral processes in the State of Ohio and its political subdivisions, as well as the effects of discrimination in areas such as employment, housing, and education that affect their ability to participate in the political process. The exclusion of Threshold Voters will interact with social and historical conditions -- including disparities due to discrimination in areas such as education, employment, housing, health services, and voting -- to cause an inequality in the opportunities enjoyed by African-American and Latino voters to nominate and elect their preferred representatives.

Under the totality of the circumstances, the exclusion of Threshold Voters will result in less opportunity for African-Americans and Latinos to participate in the political process, and to nominate and elect candidates of their choice. The minor Plaintiffs will suffer irreparable harm if they are not permitted to vote in the March 15, 2016 presidential primaries, and the Campaign will

suffer irreparable harm if the presidential primaries are tainted by electoral unfairness.  These rights cannot be restored once lost and cannot be compensated by any award of monetary damages.

The Reinterpretation therefore violates Section 2 of the Voting Rights Act, and Defendant's disenfranchisement of Threshold Voters should therefore be enjoined.

### 3.  <u>CLAIM 3 – PROCEDURAL DUE PROCESS</u>

Plaintiffs are likely to succeed on their procedural due process claim. Plaintiffs have a liberty interest in the right to vote. Defendant has deprived them of that liberty interest without any notice or opportunity to be heard.

In 2004, this Court held: "The right to vote, which Plaintiffs allege is threatened here, implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment." *Miller v. Blackwell*, 348 F. Supp.2d 916, 921 (S.D. Ohio 2004) (citing *Bell v. Marinko*, 235 F. Supp.2d 772, 777 (N.D.Ohio 2002)).

The Due Process Clause protects against extraordinary voting restrictions that render the voting system "fundamentally unfair." *Warf v. Bd. of Elections of Green Cty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010); *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008). Although courts will not intervene to address "garden variety election irregularities," changes to state election procedures raise Due Process concerns, "for example, if a state employs nonuniform rules, standards and procedures, that result in significant disenfranchisement and vote dilution, or significantly depart[ ] from previous state election practice." *Warf*, 619 F.3d at 559 (quoting and citing *Brunner*, 548 F.3d at 478).

Ohio's Threshold Voter Law guarantees Threshold Voters the right to vote in presidential primary elections. Documents issued by the Ohio Secretary of State's office dating back as far as 1984 and up to as late as 2010 either expressly take the position that Threshold Voters have the

right to vote in a presidential primary, or implicitly acknowledge such a right by saying nothing about it (likely because the Ohio Revised Code makes such a right so perfectly clear). The silence of these later publications regarding presidential primaries is significant because they do in fact state that Threshold Voters "are not permitted to vote on any question or issue on the March primary election ballot as these questions and issues are specific to the election held on the date of the primary election," but omit presidential primaries from the list of elections in which Threshold Voters may not participate. (Brunner Directive 2008-22, Beehler Decl. Exh. 3) (emphasis added).

Notwithstanding this long history of express and implicit acknowledgement of Threshold Voters' right to vote in presidential primaries, Defendant took it upon himself to "depart from previous state election practice," in the language of *Warf*, when he alone declared by executive fiat that Threshold Voters may not vote in presidential primaries. (December 2015 Election Official Manual, Section 1.03(B), page 7-6.)

Plaintiffs have found no evidence that Defendant, or anyone acting on Defendant's behalf provided any meaningful notice, opportunity to be heard, or opportunity to raise objections to Defendant's Reinterpretation of the Threshold Voter Law. Nor have they found any evidence that any appreciable procedure was observed at any time leading up to Defendant's promulgation of the Reinterpretation.

Defendant has proffered no legitimate justification or government interest to be advanced by the Reinterpretation. The only legal authority of any kind that Defendant cites in support of his personal conclusion that Threshold Voters cannot vote in presidential primaries are Ohio Revised Code Sections 3513.12 and 3513.121. (December 2015 Election Official Manual, Section 1.03(B), page 7-6, n. 7.) Those two statutory sections do not say that Threshold Voters cannot vote in presidential primaries. The statutes deal with the process for choosing delegates and alternates to

22

the national conventions of the major political parties (O.R.C. § 3513.12), and declarations of candidacy for presidency of the United States (O.R.C. § 3513.121). The notion that these statutory sections provide that Threshold Voters may not vote in presidential primaries is belied by the statutory sections that actually give Threshold Voters the right to vote in a "primary election" (O.R.C. §§ 3503.011), and that define "primary election" to include a presidential primary (O.R.C. § 3501.01(E).

By promulgating the Reinterpretation under color of state law, and by enforcing the exclusion of Threshold Voters as a matter of law without any appreciable procedure, notice, or opportunity to be heard, Defendant has deprived Threshold Voters of their fundamental voting rights without Due Process of the law as required by the Fourteenth Amendment. Defendant has rule-making authority pursuant to O.R.C. §§ 111.15 and 119.03.  Both §§ 111.15 and 119.03 involve formal, procedural requirements -- including a public hearing in the case of § 119.03 -- which Defendant failed to observe.

Defendant has not indicated what, if any, authority he purported to exercise in promulgating the Reinterpretation and excluding Threshold Voters.  But Defendant has *a fortiori* failed to provide whatever process is due in this instance, because Defendant has undertaken no procedure or process at all.

Defendant's failure to observe any semblance of procedure or process violates the Due Process Clause of Fourteenth Amendment, and his disenfranchisement of Threshold Voters should therefore be enjoined.

### 4. CLAIM 4 – TWENTY-SIXTH AMENDMENT

Plaintiffs are likely to succeed on the merits of their claim that Defendant has violated their rights guaranteed by the Twenty-Sixth Amendment to the United States Constitution. Injunctive

relief is available when a movant presents evidence of irreparable harm that will result from denial

of the right to vote. *Auerbach v. Kinley*, 499 F. sup. 1329, 1342-43 (N.D.N.Y. 1980) (enjoining

state officials on the basis of Twenty-Sixth Amendment claims).

> The relevant provision of the 26th Amendment is:

>> The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

> U.S. CONST. amend. XXVI, § 1.

> "[T]he twenty-sixth amendment . . . was adopted to remedy the obvious logistical

problems that would accompany concurrent federal, state, and local elections at the same voting

place with electorates of different ages able to vote in some elections but not in others."

*Wounded Head v. Tribal Council of the Oglala Sioux Tribe of the Pine Ridge Reservation*, 507

F.2d 1079, 1083 (8th Cir. 1975).

> Issues related to the Twenty-Sixth Amendment are not frequently litigated. The First

Circuit has stated of the Amendment: "Few cases have been decided under it. . . ." *Walgren v.*

*Howes*, 482 F.2d 95, 100 (1st Cir. 1973). The paucity of case law remains today. However, in

reversing a District Court's dismissal of a Twenty-Sixth Amendment case (and remanding for

further proceedings), the *Walgren* court did provide some guidance regarding interpretation of

the Amendment:

>> [I]t seems only sensible that if a condition, not insignificant, disproportionately affects the voting rights of citizens specially protected by a constitutional amendment, the burden must shift to the governmental unit to show how the statutory scheme effectuates, in the least drastic way, some compelling governmental objective.

*Walgren*, 482 F.2d at 102.

> Substantively, "the Twenty-Sixth Amendment to the United States Constitution . . .

require[s] [states] to treat all citizens 18 years of age or older alike for all purposes relating to

voting." *Jolicoeur v. Mihaly*, 5 Cal.3d 565, 582 (1971) (holding unconstitutional a California directive under which minors were denied the right to vote on the basis that their parents were not residents of California). In finding a violation of the Twenty-Sixth Amendment, the Supreme Court of California stated of California's voting restriction: "It is clear that respondents have abridged petitioners' right to vote in precisely one of the ways that Congress sought to avoid--by singling minor voters out for special treatment." *Id*. at 575. That is precisely what the Defendant has done in the 2015 Manual.

The U.S. Constitution is silent on the meaning or interpretation of the term "eighteen years of age" as used in the Twenty-Sixth Amendment. The determination of which voters legally qualify as "eighteen years of age or older" for purposes of Twenty-Sixth Amendment voting rights is a matter of state law. Ohio law provides that "every qualified elector who is or will be on the day of the next general election eighteen or more years of age . . . shall be entitled to vote such ballot at the primary election."  O.R.C. § 3503.011. In simple terms, if an Ohio voter is 17 on primary day, but will be 18 on the day of the next general election, that 17 year old is legally deemed to be "eighteen years of age or older" for purposes of voting a ballot in an Ohio primary election. Ohio law therefore defines the term "eighteen years of age or older" for purposes of the Twenty-Sixth Amendment, and defines Ohio citizens' "right to vote" to include the constituent right to vote a primary ballot in a primary election, including a "presidential primary election." Ohio Revised Code § 3501.01(E)(2).

Under Ohio law, therefore, Threshhold Voters are legally 18 years old for the purpose of exercising the Constitutional right to vote in primary elections. The state has determined that these individuals are "fully mature enough to vote." *Jolicoeur v. Mihaly*, 5 Cal.3d 565, 573 (1971) (quoting S.Rep. 92-26, 1971 U.S. Code Cong. & Admin News 362). In fact, the state permits

Threshold Voters to vote in equally important federal races for Senate and U.S. House of Representatives. By statutory law, Ohio has given Threshold Voters the same franchise enjoyed by voters who are 18 years of age by the date of the primary election. Defendant's position appears to be that he alone may selectively disenfranchise Threshold Voters by administrative decree. Defendant is wrong. By denying the right to vote to individuals who have been expressly designated as 18 years of age (for voting purposes) under the Ohio Revised Code, Defendant has abridged the voting rights of citizens who are eighteen years of age or older, within the meaning of the 26th Amendment. Plaintiffs are therefore likely to prevail on the merits of their 26th Amendment claim, and Defendant's disenfranchisement of Threshold Voters should therefore be enjoined.

### E.  ANY INJURY TO DEFENDANTS FROM GRANTING AN INJUNCTION WOULD BE SELF-INFLICTED

Plaintiffs have detailed above in the Statement of Facts the extraordinary and unprecedented nature of Defendant's Reinterpretation of clear Ohio statutory law, and need not repeat those facts. Suffice it to say that, to the extent Defendant claims an injury resulting from injunctive relief, that injury is due solely and completely to Defendant's wholly unsupported and unprecedented Reinterpretation and voter exclusion, not to some action undertaken by Plaintiffs, who only sought to vote as Ohio law provides.

### IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for a Temporary Restraining Order.

Respectfully submitted,

26

KEGLER BROWN HILL & RITTER

By: /s/ Robert G. Cohen
  Robert G. Cohen, Esq. (0041707)
  Jason Beehler, Esq. (0085337)

  *Attorneys for Plaintiffs*
  65 E. State Street, Suite 1800
  Columbus, OH 43215
  (614) 462-5400
  rcohen@keglerbrown.com
  jbeehler@keglerbrown.com

GARVEY SCHUBERT BARER

By: /s/ Malcolm Seymour
  Malcolm Seymour III, Esq.

  *Pro Hac Vice Admission Forthcoming*

  *Of Counsel to Plaintiffs*
  100 Wall Street
  20th Floor
  New York, NY 10005
  (212) 965-4533
  mseymour@gsblaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed and served via the Court's electronic filing system on the 10th day of March, 2016.

<u>/s/ Robert G. Cohen</u>
Robert G. Cohen