# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RANDY SMITH,** *et al.,*

      **Plaintiffs,**

-v-                                     **Case No.: 2:16-cv-212**
                                                     **JUDGE SMITH**
                                                 **Magistrate Judge Deavers**

**JON A. HUSTED,**
**OHIO SECRETARY OF STATE,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8) and Defendant's Motion to Dismiss (Doc. 12).  The motions are fully briefed and ripe for review.  For the reasons that follow, the Court **ABSTAINS** from a decision on Plaintiffs' motion and **STAYS** this matter pending the resolution of the state court questions currently under consideration before the Franklin County Court of Common Pleas in *Schwerdtfeger, et al. v. Husted*, Case No. 16-cv-2346.  Plaintiffs have also requested oral argument in this case in their Reply in support of their Motion for Temporary Restraining Order and Preliminary Injunction.  Plaintiffs' request is **DENIED** due to the time constraints on the Court.

## I.    BACKGROUND

The Plaintiffs are comprised of six 17-year-olds and their parents, as well as the Bernie 2016, Inc. campaign.  The individual Plaintiffs Malik Smith, Emma Schubert, Graham Ball, Carver Wolfe, Kylie Boyle, and Zephania Galloway are all Ohio residents and currently 17 years

of age and will turn 18 prior to the November 8, 2016 general election (hereinafter "Individual Plaintiffs").

Plaintiffs filed this lawsuit on March 8, 2016, just one week before Ohio's primary election[1] alleging violations of 42 U.S.C. § 1983 for denial of their 14th Amendment Equal Protection Rights and Procedural Due Process Rights, denial of the 26th Amendment right to vote, and violation of the Voting Rights Act of 1965, Section 2, 52 U.S.C. § 10301. Plaintiffs seek to enjoin Defendant, the Ohio Secretary of State, John Husted (hereinafter, "Secretary Husted"), from preventing threshold voters from participating in the presidential primaries scheduled for March 15, 2016.

This case arises out of Secretary Husted's interpretation of the Ohio Revised Code provisions on election law. Specifically, Section 3503.011 of the Ohio Revised Code titled "Qualifications to vote in primary" states:

> At a primary election every qualified elector who is or will be on the day of the next general election eighteen or more years of age, and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote, shall be entitled to vote such ballot at the primary election.

This statute, enacted March 23, 1981, is commonly referred to as the Threshold Voter Law and 17-year-olds who will turn 18 before the general election are commonly referred to as "Threshold Voters". Ohio is one of more than 20 states that have enacted Threshold Voter Laws. To further clarify, "primary election" is defined in Ohio Revised Code § 3501.01(E)(1) as:

> an election held for the purpose of nominating persons as candidates of political parties for election to offices, and for the purpose of electing persons as members of the controlling committees of political parties and as delegates and alternates to the conventions of political parties.

---

[1] But voting for the primary election is already underway with absentee voting by mail and early in-person voting beginning on February 17, 2016.

In 1993, the Ohio Legislature added the definition for "presidential primary election" in Ohio Revised Code § 3501.01(E)(2) as:

> a primary election as defined by division (E)(1) of this section at which an election is held for the purpose of choosing delegates and alternates to the national conventions of the major political parties pursuant to section 3513.12 of the Revised Code.  Unless otherwise specified, presidential primary elections are included in references to primary elections.

In December 2015, Secretary Husted issued a revised Ohio Election Official Manual (hereinafter, "Election Manual") that explains the rights of a 17-year-old voter based on interpretation of Ohio Revised Code Sections 3503.01, 3503.011, 3503.07, 3513.12, and 3513.121, as well as an Ohio Supreme Court case, *State ex rel. Webber v. Felton*, 77 Ohio St. 554 (1908).  (Doc. 9-11, attached as Ex. 7 to Pls.' Mot., Ohio Election Manual at § 1.03).[2]  The Election Manual specifically provides:

**1. 17-Year-Old-Voter**

> Ohio law allows a 17-year-old voter who will be 18 years of age on or before the date of the next general election to vote in the primary election *solely* on the *nomination* of candidates.  This is because the 17-year-old voter will be eligible to vote for the nominees at the November general election.
>
> As with every voter, a 17-year-old voter must be registered to vote and satisfy Ohio's voter identification requirements.
>
> Voters who are 17 years old as of the primary election are not permitted to vote on any of the following:
>
> - State Party Central Committee

---

[2] Both parties have provided detailed explanations of prior Ohio Secretaries of State's interpretation of the Threshold Voter Law and guidance for how county boards of elections should process ballots of 17-year-old voters.  There is no dispute that the Threshold Voter Law has permitted 17-year-olds to vote in primary elections on the nomination of candidates.  Prior interpretations have explained that 17-year-olds are excluded from voting on issues like school levies and statewide ballot issues, or the election of state or county central committee persons.  (*See* Doc. 9, Exs. 1–18 in support of Pls.' Mot.).  Current Ohio Secretary of State Husted has now explicitly added presidential primaries to this list of elections in which 17-year-olds are not permitted to vote, explaining that the presidential primary is actually an election of a delegate and not a nomination.  (Doc. 9-11, Ohio Election Official Manual p. 7-6).

- County Party Central Committee
- Questions and Issues

In presidential primary elections, a 17-year-old voter is not permitted to vote for presidential delegates, because delegates are elected and not nominated.

The ballot style given to a seventeen-year-old voter is determined in accordance with the type of voting system used by the county and instructions of the board.

(Doc. 9-11, Ohio Election Official Manual p. 7-6).

The aforementioned explanation was issued in the Election Manual and was not an official directive of Secretary Husted.  There is no evidence Secretary Husted followed any rule-making procedures that may have been required by Ohio Revised Code sections 111.15 and 119.03 in the issuance of the manual.

Each of the Individual Plaintiffs is a Threshold Voter who wishes to vote in the March 15th presidential primary election.  The Individual Plaintiffs represent that they each planned to vote in the Ohio presidential primaries but just recently learned through media reports that they are now prohibited from voting.  (*See* Doc. 9, Individual Pls.' Decls. attached as Exs. 19–23 to Pls.' Mot.).

## II.    STANDARD OF REVIEW

The Court must consider four factors in determining whether to issue a temporary restraining order and/or preliminary injunction:

(1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).  These four considerations "are factors to be balanced, not prerequisites that must be

met." *Hamad v. Woodcrest Condo. Assoc.*, 328 F.3d 224, 230 (6th Cir. 2003); *see also Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).  Notwithstanding this balancing approach, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The decision to issue a temporary restraining order and/or preliminary injunction lies within the sound discretion of the district court.  *See Golden v. Kelsey-Hayes*, 73 F.3d 648, 653 (6th Cir. 1996).  As noted by the Supreme Court and Sixth Circuit, "[t]he purpose of a preliminary injunction is merely to preserve the status quo until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Certified Restoration Dry Cleaning Network, L.L.C., v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).  The issuance of a preliminary injunction is an "extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III.    DISCUSSION

Plaintiffs are seeking injunctive relief regarding their alleged constitutional violations and to enjoin the Secretary Husted from barring them from voting in Ohio's primary election to be held on Tuesday, March 15, 2016.  Two preliminary matters are brought to this Court's attention by Defendant: 1) Defendant asserts that laches bars this suit as Plaintiffs were aware of their inability to vote for President no later than December of 2015; and 2) Defendant asserts that this Court should abstain from exercising jurisdiction over this case pursuant to the *Pullman* abstention doctrine.  *Railroad Comm'n of Texas v. Pullman Co.* ("*Pullman*"), 312 U.S. 496, 500-

501 (1941).  To the extent necessary, the Court will consider Plaintiffs' claims to determine whether they have established a likelihood of success on those claims; and whether injunctive relief should be awarded in this case.

**A.      Laches**

Defendant raised the issue of laches against the Plaintiffs in this case, alleging that Plaintiffs were well aware that they were not permitted to elect the presidential delegates in the 2016 primary elections well before March 8th, when the Complaint was filed.  Plaintiffs argue that laches only applies to claims for monetary damages and not in cases where a plaintiff seeks injunctive relief.  Plaintiffs further argue that Defendants cannot show that "Plaintiffs engaged in conduct 'that amounted to an assurance to the defendant . . . that plaintiff[s]' would not assert their rights."  (Doc. 13, Pl.'s Reply at 1 (quoting *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000) (alteration in original)).

"It is well established that in election-related matters, extreme diligence and promptness are required.  When a party fails to exercise diligence in seeking extraordinary relief in an election-related matter, laches may bar the claim."  *McClafferty v. Portage Cnty. Bd. of Elections*, 661 F.Supp.2d 826, 839 (N.D. Ohio 2009) (internal citations and quotation marks omitted).  In the Sixth Circuit, laches is the "negligent and unintentional failure to protect one's rights.'"  *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)).  "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it."  *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)).

Assuming *arguendo* that Plaintiffs were not diligent in pursuing their claims because they were on notice of Secretary Husted's stance on this issue in December 2015, Defendant still has not set forth a showing of prejudice substantial enough for this Court to apply laches to Plaintiffs' claims.  Defendant makes three allegations of prejudice: 1) the parties were forced into an expedited briefing schedule; 2) a remedy would create a division of rights between Threshold Voters who have already voted and those yet to vote; and 3) there would be prejudice to Secretary Husted because he would have to retrain county boards of elections and poll workers and reprint instructions.

Defendant's first claim of prejudice—that an expedited briefing schedule was required—is not enough to impose laches on this lawsuit on its own.  Defendant cites  *State ex rel. SuperAmerica Grp. v. Licking Cnty Bd. of Elections*, 685 N.E.2d 507, 510, 80 Ohio St. 3d 182, 186 (1997) for the proposition that an expedited briefing schedule is sufficient on its own to impose laches, but a more thorough reading of *SuperAmerica* clarifies that is not the case.  In *SuperAmerica*, the Ohio Supreme Court found that laches applied not only because an expedited schedule was required, but also because "by the time this case is completely resolved by our issuance of a mandate, the board's ability to prepare, print, and distribute appropriate ballots will be jeopardized due to the expiration of the date to provide absentee ballots."  *Id.* at 510–11. Even if the Court could find laches solely due to the expedited briefing schedule, the Court finds that the briefing by both parties and this Court's consideration of this case has been only minimally affected by the delay of Plaintiffs' filing.

Defendant's second allegation of prejudice is an improper consideration for the Court when determining if laches should apply.  A laches analysis judges the prejudice to the party asserting it, in this case, Secretary Husted.  Defendant alleges that many Threshold Voters have

already voted and their votes have been mixed into the general vote such that it would be difficult to now find them and count them should an injunction be granted.  But the person who suffers prejudice from such a problem is not Secretary Husted, but any Threshold Voter whose vote is not counted.  Second, while the Court appreciates Secretary Husted's concern for the constitutional rights of Threshold Voters, the equal protection claim made by Secretary Husted does not prejudice him or the office, but the other Threshold Voters who are not asserting laches in this case.

In fact, while Defendant is correct that laches can bar an election case, most cases using laches to bar an election case, including all of those cited by Defendant fall into one of two categories of prejudice: 1) the applicable secretary of state would have to reprint or order new ballots if relief was granted; and 2) the applicable secretary of state would not have time to add a new candidate or issue to the ballot prior to statutorily imposed deadlines.  *See Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (new set of ballots required to add a new candidate); *Kay*, 621 F.2d at 813 (new ballots required to add candidate); *Arizona Pub. Integrity Alliance Inc. v. Bennett*, No. CV-14-01044-PHX, 2014 WL 3715130, at *2 (D. Ariz. June 23, 2014) ("No relief can be granted that would delay the printing of the ballots."); *Gelineau v. Johnson*, 896 F. Supp. 2d 680, 683 (W.D. Mich. 2012), *aff'd* (Sept. 19, 2012) (new set of ballots necessary to add new candidate); *State ex rel. Landis v. Morrow Cnty. Bd. of Elections*, 724 N.E.2d 775, 777, 88 Ohio St. 3d 187, 189 (2000) ("If [the plaintiff's] action were to be fully briefed, the time for printing absentee ballots would have passed"); *SuperAmerica*, 685 N.E.2d at 510-11 (1997) ("the board's ability to prepare, print, and distribute appropriate ballots will be jeopardized due to the expiration of the date to provide absentee ballots.").  The Court also notes that in none of the cited cases did a court apply laches where the issue was a certain group of people's ability to

8

vote.  Rather, in each case, the courts applied laches to bar the addition of issues or parties to the ballot.

Defendant's allegations of prejudice fall into neither of these categories.  The Court notes Secretary Husted will not have to print new ballots or materials for Threshold Voters.  Rather, Secretary Husted will merely have to give Threshold Voters the same ballot any other qualified voter receives and count the vote for president if Plaintiffs were to succeed.  The Court recognizes that Defendant would have to retrain his staff shortly before the election, but notes that the entirety of retraining in this case would consist of telling poll workers and county boards of elections that "17 year-old voters can indeed vote for election of delegates to a national convention."  (Doc. 12-5, Harsman Aff. at ¶ 10).  All other votes would be counted the same way as they currently are handled.  While the Court notes this could be a burden on Defendant, it does not find that Defendant is so prejudiced by the delay as to completely bar Plaintiffs' claims. Accordingly, the Court finds that laches does not bar Plaintiffs' claims.

**B.     Abstention**

Defendant also asserts that this Court should abstain from exercising jurisdiction over this case based on *Pullman* abstention because a similar group of 17-year-old voters filed a similar case in the Franklin County Common Pleas Court, *Schwerdtfeger, et al. v. Husted*, Franklin C.P. No. 16-cv-2346, challenging Secretary Husted's Election Manual interpreting Ohio Revised Code Section 3503.011.  Defendant argues that abstention under *Pullman* is appropriate because a state court ruling in Plaintiffs' favor on the interpretation of Ohio law would eliminate the need for the Court to address the federal questions raised by Plaintiffs in this action.  Plaintiffs, however, assert that state law is not unclear and further, because of the short period of time

9

remaining before the primary election, this Court should rule on Plaintiffs' request for injunctive relief and not abstain.

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268 (1910). However, under the doctrine of abstention, the federal court may decline to exercise or postpone the exercise of jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). The Supreme Court has explained that abstention:

> Is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Id*. Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id*. at 814 (citing *Pullman*, 312 U.S. 496, 500–01). Application of the *Pullman* abstention doctrine "is warranted only when a state law is challenged and resolution by the state of certain questions of state law may obviate the federal claims, or when the challenged law is susceptible of a construction by state courts that would eliminate the need to reach the federal question." *GTE N., Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000). There are two requirements for *Pullman* abstention: 1) an unclear state law, and 2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question. *See Tyler v. Collins*, 709 F.2d 1106, 1008 (6th Cir. 1983). The Court will address each of these factors to determine if *Pullman* applies.

### 1.    Unclear State Law

The very existence of this case and the parallel state case illustrate the confusion in the interpretation of state law.  The Threshold Voter Law itself clearly states that "[a]t a primary election every qualified elector who is or will be on the day of the next general election eighteen or more years of age, and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote, shall be entitled to vote such ballot at the primary election."  O.R.C. § 3503.011.  However, the interpretation of this law in conjunction with Ohio's Constitution and Ohio Revised Code sections 3513.12 and 3513.121 regarding the election of delegates in a presidential primary, has created a dispute as to whether 17-year-olds are permitted to vote for the election of delegates.  There is no dispute between the parties that 17-year-olds are permitted to vote for nomination of candidates, but Secretary Husted does not consider the presidential primary a nomination of the presidential candidate, but rather an election of a delegate to the respective parties' national convention.

The proper interpretation of Ohio Revised Code § 3503.011, as well as the aforementioned election law statutes, and the *Webber* case, are all questions of state law best left to the state court to decide.

### 2.    Effect of Clarification

The second requirement for the Court is to decide if a clarification of state law would obviate the necessity of deciding a federal claim question.  There is no dispute that if the state court grants the requested relief sought by plaintiffs in *Schwerdtfeger, et al. v. Husted*, then this Court would "avoid the possibility of unnecessarily deciding a constitutional question."  *Assoc. Gen. Contractors of Oh., Inc. v. Drabik*, 214 F.3d 730, 739 (6th Cir. 2000) (quoting *Harris Cnty.*

*Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975)).  Therefore, this Court will stay this matter "to provide the state court an opportunity to settle the underlying state law question."  *Id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court **ABSTAINS** from a decision on Plaintiffs' motion and **STAYS** this matter pending the resolution of the state court questions currently under consideration in *Schwerdtfeger, et al. v. Husted*, Franklin C.P. Case No. 16-cv-2346.

The Clerk shall stay this case pending notification from the parties of resolution of the state court proceeding and the necessity of resolving Plaintiff's request for injunctive relief.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**